**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 11-1049**

─────────

OHIO RIVER VALLEY ENVIRONMENTAL COALITION, INCORPORATED;
WEST VIRGINIA HIGHLANDS CONSERVANCY, INCORPORATED,

                Plaintiffs – Appellants,

        v.

KENNETH SALAZAR, Secretary of the Interior,

                Defendant – Appellee,

WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION; WEST
VIRGINIA COAL ASSOCIATION,

                Intervenors/Defendants – Appellees.

─────────

Appeal from the United States District Court for the Southern
District of West Virginia, at Huntington.  Robert C. Chambers,
District Judge.  (3:09-cv-00149-RCC)

─────────

Argued: December 6, 2011          Decided: January 10, 2012

─────────

Before NIEMEYER, SHEDD, and DAVIS, Circuit Judges.

─────────

Affirmed by unpublished per curiam opinion.

─────────

**ARGUED:** Walton Davis Morris, Jr., MORRIS LAW OFFICE, PC,
Charlottesville, Virginia, for Appellants.  Maggie Baker Smith,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Sarah
Janette Surber, WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL
PROTECTION, Charleston, West Virginia; James Ronald Snyder,
JACKSON KELLY, PLLC, Charleston, West Virginia, for Appellees.

**ON BRIEF:** Joseph M. Lovett, Derek O. Teaney, APPALACHIAN CENTER FOR THE ECONOMY & THE ENVIRONMENT, Lewisburg, West Virginia, for Appellants. Ignacia S. Moreno, Assistant Attorney General, Kathryn E. Kovacs, Ruth Ann Storey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C; Steven C. Barcley, UNITED STATES DEPARTMENT OF THE INTERIOR, Pittsburgh, Pennsylvania, for Federal Appellee. Judith P. Thomas, WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, Charleston, West Virginia, for Appellee West Virginia Department of Environmental Protection.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal concerns West Virginia's statutory and regulatory program under the Surface Mining Reclamation and Control Act of 1977 ("SMCRA" or "the Act"), 30 U.S.C. §§ 1201-1328. Appellants Ohio River Valley Environmental Coalition, Inc. and West Virginia Highlands Conservancy, Inc. (collectively "OVEC") challenge Appellee Kenneth Salazar's approval, in his official capacity as Secretary of the Interior ("Secretary"), of two amendments to West Virginia's surface coal mining regulations.

On cross-motions for summary judgment, the district court considered OVEC's argument that the Secretary's approval is arbitrary and capricious because the amendments violate SMCRA's mandate that "[n]othing in [the Act] shall be construed as superseding, amending, modifying, or repealing" the Clean Water Act ("CWA"), 33 U.S.C. §§ 1151-75, "the State laws enacted pursuant thereto, or other Federal laws relating to the preservation of water quality," 30 U.S.C. § 1292(a)(3). The district court denied OVEC's motion for summary judgment, granted summary judgment in favor of the Secretary and Intervenors-Appellees West Virginia Department of Environmental Protection ("WVDEP") and West Virginia Coal Association ("WVCA") (collectively "Intervenors"), and entered a final judgment in favor of the Secretary and Intervenors. We affirm.

3

I.

A.

Congress enacted SMCRA in 1977 to strike a balance between the nation's interests in protecting the environment from the adverse effects of surface coal mining[1] and in assuring the coal supply essential to the nation's energy requirements. See 30 U.S.C. § 1202(a), (d), (f). Congress took a cooperative federalism approach to the regulation of surface coal mining by "establish[ing] in SMCRA 'minimum national standards' . . . and encourag[ing] the States, through an offer of exclusive regulatory jurisdiction, to enact their own laws incorporating these minimum standards, as well as any more stringent, but not inconsistent, standards that they might choose." Bragg v. West Virginia Coal Ass'n, 248 F.3d 275, 288 (4th Cir. 2001) (citing H.R. Rep. No. 95-218, at 167 (1977), reprinted in 1977 U.S.C.C.A.N. 593, at 698; 30 U.S.C. § 1255(b)).

SMCRA charges the Secretary, acting through the Office of Surface Mining Reclamation and Enforcement ("OSM"), with the task of reviewing and either approving or disapproving State regulatory programs for the control of surface coal mining. 30

---

[1] "Surface mining" is defined as "[m]ining in surface excavations, including placer mining, mining in open glory-holes or mining pits, mining and removing ore from open cuts, and the removal of capping or overburden to uncover ore." 36 C.F.R. § 9.2(f).

U.S.C. § 1211(c)(1). Approval or disapproval of a State program must comply with the procedural and substantive requirements set forth in SMCRA and its implementing regulations. See id. § 1253(b); 30 C.F.R. § 732.15. For instance, the Secretary shall not approve a State program unless "the State's laws and regulations are in accordance with the provisions of the Act and consistent with the requirements of the Chapter." 30 C.F.R. § 732.15(a). The terms "consistent with" and "in accordance with" are further defined as follows:

> (a) With regard to the Act, the State laws and regulations are no less stringent than, meet the minimum requirements of and include all applicable provisions of the Act.

> (b) With regard to the Secretary's regulations, the State laws and regulations are no less effective than the Secretary's regulations in meeting the requirements of the Act.

Id. § 730.5. Review of a State program amendment utilizes the same criteria applicable to approval or disapproval of a State program in the first instance. Id. § 732.17(h)(10). Accordingly, the Secretary may not approve amendments to a State program unless, at a minimum, the amendments render the State program no less stringent than SMCRA and no less effective than the federal implementing regulations.

B.

SMCRA and its implementing regulations protect surface waters as well as the entire "prevailing hydrologic balance at

5

the mine-site and in associated off-site areas." 30 U.S.C. §§ 1265(b)(10), 1266(b)(9). "Hydrologic balance" is defined in the regulations as:

> the relationship between the quality and quantity of water inflow to, water outflow from, and water storage in a hydrologic unit such as a drainage basin, aquifer, soil zone, lake, or reservoir. It encompasses the dynamic relationships among precipitation, runoff, evaporation, and changes in ground and surface water storage.

30 C.F.R. § 701.5. In order to protect the portion of the hydrologic balance affected by discharges from surface coal mining operations, SMCRA's implementing regulations require that:

> [d]ischarges of water from areas disturbed by surface mining activities shall be made in compliance with all applicable State and Federal water quality laws and regulations and with the effluent limitations for coal mining promulgated by the U.S. Environmental Protection Agency set forth in 40 CFR Part 434.

Id. § 816.42. SMCRA further provides that "[n]othing in this Act shall be construed as superseding, amending, modifying, or repealing" the CWA, "the State laws enacted pursuant thereto, or other Federal laws relating to preservation of water quality." 30 U.S.C. § 1292(a)(3). In other words, SMCRA requires that discharges associated with surface mining operations comply with the CWA.

In addition to mandating protection of the hydrologic balance once surface coal mining begins, SMCRA calls for a

6

detailed analysis of area hydrology prior to commencement of such operations, and requires that mining operations be designed to ensure hydrologic protection. To this end, the applicable regulatory authority (WVDEP in this case) must conduct a cumulative hydrologic impact assessment ("CHIA") of the proposed operation and all anticipated mining in the area in conjunction with the permitting process. The primary purpose of the CHIA is to determine, "for purposes of permit approval, whether the proposed operation has been designed to prevent material damage to the hydrologic balance outside the permit area." 30 C.F.R. § 780.21(g)(1); see also 30 U.S.C. § 1260(b)(3). Although the regulatory authority may not approve the permit if the CHIA indicates that the proposed operation will cause "material damage to the hydrologic balance outside the permit area," neither the Act nor its implementing regulations defines this phrase.

C.

The focus of this case is West Virginia's regulatory provision requiring WVDEP to prepare a CHIA in conjunction with its review of surface coal mining permits. West Virginia's first proposed amendment repeals its definition of "cumulative impact" in the State's CHIA provision, which previously provided as follows:

7

> Cumulative impact means the hydrologic impact that results from the cumulation of flows from all coal mining sites to common channels or aquifers in a cumulative impact area. Individual mines within a given cumulative impact area may be in full compliance with effluent standards and all other regulatory requirements, but as a result of the co-mingling of their off-site flows, there is a cumulative impact. The Act does not prohibit cumulative impacts but does emphasize that they be minimized. When the magnitude of cumulative impacts exceeds threshold limits or ranges as predetermined by the Division, they constitute material damage.

J.A. 36; see also W. Va. Code St. R. § 38-2-2.39 (pre-2001). The second amendment at issue in this case adds a definition for "material damage to the hydrologic balance outside the permit area."[2] The CHIA provision, as amended, now provides:

> The Director (Secretary) shall perform a separate CHIA for the cumulative impact area of each permit application. This evaluation shall be sufficient to determine whether the proposed operation has been designed to prevent material damage to the hydrologic balance outside the permit area. Material damage to the hydrologic balance outside the permit area means any long term or permanent change in the hydrologic balance caused by surface mining operation(s) which has a significant adverse impact on the capability of the affected water resource(s) to support existing conditions and uses.

J.A. 36-37; see also W. Va. Code St. R. § 38-2-3.22.e (emphasis added).

Notably, we previously had occasion to consider both proposed amendments in Ohio River Valley Envtl. Coal., Inc. v.

_____

[2] As noted above, there is no corresponding federal definition for this phrase.

8

Kempthorne, 473 F.3d 94 (4th Cir. 2006). West Virginia initially submitted the amendments to OSM on May 2, 2001, 66 Fed. Reg. 28,682, 28,683 (May 24, 2001), and the Secretary approved them on December 1, 2003, 68 Fed. Reg. 67,035, 67,043 (Dec. 1, 2003) (codified at 30 C.F.R. pt. 948).[3] OVEC challenged OSM's final rule in the United States District Court for the Southern District of West Virginia, seeking declaratory and injunctive relief on the basis that the Secretary's approval of the amendments violated SMCRA and the Administrative Procedure Act ("APA"). Ohio River Valley Envtl. Coal., Inc. v. Norton, No. 3:04-0084, 2005 WL 2428159 (S.D. W. Va. Sept. 30, 2005); see also 30 U.S.C. § 1276(a)(1) (providing that "any action of the Secretary to approve or disapprove a State program . . . pursuant to [SMCRA] shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is at issue"). The district court vacated and remanded the amendments, finding that the Secretary contravened the APA by failing to provide a reasoned analysis in support of his conclusion that the amendments render the State program no less effective than the federal regulations. Norton, 2005 WL 2428159, at *3. We affirmed the

---

[3] The Secretary does not personally approve State program amendments, but rather acts through the Director of OSM. Kempthorne, 473 F.3d at 103.

9

judgment of the district court. Kempthorne, 473 F.3d at 104 (holding that "the Secretary's failure to analyze and explain the decision to approve West Virginia's program amendment rendered the decision arbitrary and capricious" under the APA, which the district court had properly applied).

Following our decision, West Virginia resubmitted the amendments under cover of an explanatory letter discussing, inter alia, the State's position that its SMCRA program would remain as effective and as stringent as federal law after the deletion of the "cumulative impact" definition and the addition of the "material damage" definition. OSM approved the amendments a second time on December 24, 2008, noting in its final rule our admonition that the agency "must examine how each proposed change would affect program implementation in order to determine that the program will remain no less effective than Federal regulations in meeting the requirements of SMCRA." J.A. 187 (citing Kempthorne, 473 F.3d at 103). OSM reviewed the amendments accordingly and concluded that the proposed changes would not make the State program less effective than the federal regulations are at achieving the purposes of SMCRA. OSM noted that:

> West Virginia has stated that it intends to implement its proposed definition in a manner that provides objective criteria for determining whether a proposed operation is designed to prevent material damage to the hydrologic balance outside the permit area.

10

> Further, it has stated that it would do so in a manner that gives reasonable meaning to the phrase 'material' while providing consistent application understandable to all parties.

J.A. 191. OSM emphasized that its approval of the new definition for "material damage to the hydrologic balance outside the permit area" was contingent upon West Virginia implementing the definition consistent with its explanatory letter and the intent of SMCRA. OSM warned that, "should we later find that this definition is not being implemented in a manner consistent with the [final rule], OSM may revisit this finding." Id. OVEC subsequently commenced this action for judicial review, again challenging the approval as arbitrary and capricious. OVEC sought to retain the "cumulative impact" definition, and to have the "material damage" definition vacated. The district court denied OVEC's motion for summary judgment and granted the cross-motions filed by the Secretary and Intervenors. Ohio River Valley Envtl. Coal., Inc. v. Salazar, No. 3:09-0149, 2011 WL 11287 (S.D. W. Va. Jan. 3, 2011). OVEC timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.


II.

We review the district court's grant of summary judgment de novo, applying the same standards that the district court was required to apply. See Laber v. Harvey, 438 F.3d 404, 415 (4th

11

Cir. 2006) (en banc). The material facts of this case are not in dispute; thus, resolution of the matter on summary judgment is appropriate.

Federal administrative agencies are subject to the APA, which establishes the scope of judicial review of challenged agency actions and instructs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). SMCRA similarly requires a reviewing court to determine whether the Secretary's approval of a State program "is arbitrary, capricious, or otherwise inconsistent with law." 30 U.S.C. § 1276(a)(1).

Because an agency has expertise in its particular field, a presumption of validity attaches to agency actions. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971) (overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977)). A reviewing court "must consider whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Id. at 416. A reviewing court also considers whether the agency articulated a "rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962). These considerations apply with equal

12

force where an agency acts in the first instance and where, as here, the agency seeks to amend an existing rule. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42 (1983). If the court finds that the agency has established the requisite rational connection, the action must be upheld even if the court disagrees with the agency's decision. See Overton Park, 401 U.S. at 416 ("A court is not empowered to substitute its judgment for that of the agency.").

As the district court noted, we also consider whether the agency followed all required procedures, including, in this case, ensuring that the proposed amendments render the State program no less stringent than the SMCRA and no less effective than the federal regulations. See Salazar, 2011 WL 11287, at *3 (citing Overton Park, 401 U.S. at 417). Accordingly, we will find the Secretary's approval of the proposed amendments unlawful if he demonstrated a "clear error of judgment" in approving amendments that fail to satisfy the requirements of SMCRA.

Having had the benefit of oral argument and having carefully reviewed the briefs, record, and controlling legal authorities, we agree with the district court's analysis. The district court properly determined that the Secretary "has provided an adequate basis for his approval" and that "West Virginia's material damage definition does not supersede, amend,

13

modify, or repeal the [CWA]." <u>Salazar</u>, 2011 WL 11287, at *8. Accordingly, we affirm on the basis of the district court's well reasoned opinion.

<u>AFFIRMED</u>